# Supreme Court of Louisiana

The Opinions handed down on the **19th day of October, 2016**, are as follows:

**PER CURIAM**:

2014-BA-1338       IN RE: COMMITTEE ON BAR ADMISSIONS CFN-8972

CONDITIONAL ADMISSION GRANTED.

WEIMER, J., dissents and assigns reasons.
HUGHES, J., dissents in part for the reasons assigned by
Crichton, J.
CRICHTON, J., dissents in part and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2014-BA-1338

IN RE: COMMITTEE ON BAR ADMISSIONS CFN-8972

BAR ADMISSIONS PROCEEDING

PER CURIAM

Petitioner successfully passed the Louisiana bar examination in July 2003. The Committee on Bar Admissions ("Committee") subsequently declined to certify petitioner for admission, citing his arrests for felony aggravated battery and hit and run driving and his lack of candor in failing to disclose either of these arrests to the Committee. While the battery charge was still pending, petitioner applied to this court for admission. We declined to consider the application but reserved petitioner's right to reapply after the criminal charge was concluded.

Petitioner reapplied for admission in 2005, after the battery charge was dismissed. At that time, we appointed a commissioner to take character and fitness evidence, but by 2014, petitioner had not taken any action to move the matter towards resolution. The commissioner therefore requested to be relieved of his appointment. Accordingly, in April 2014, we dismissed petitioner's application for admission without prejudice. *In re: Committee on Bar Admissions CFN-8972*, 05-1046 (La. 4/9/14), 138 So. 3d 604.

In June 2014, petitioner again sought admission. We remanded the matter to the Committee on Bar Admissions Panel on Character and Fitness to conduct an investigation and appointed a commissioner to take character and fitness evidence. Following a hearing, the commissioner recommended to this court that petitioner be conditionally admitted to the practice of law, subject to the following

conditions: (1) petitioner shall comply with a Judges and Lawyers Assistance Program ("JLAP") agreement, and (2) petitioner shall be required to take additional continuing legal education courses each year of his conditional admission. Both the Committee and petitioner objected to the commissioner's recommendation, and accordingly, the case was set on the docket for oral argument in October 2015.

During oral argument, questions were raised concerning petitioner's blood Phosphatidylethanol (PEth) test conducted at Palmetto Addiction Recovery Center in July 2013, and whether there was a discrepancy between the positive results of the test and petitioner's self-report to Palmetto that he now drinks alcohol only infrequently. Because these issues were not addressed at the hearing, and an explanation of the apparent discrepancy required expert medical opinion which was not contained in the record, on November 12, 2015, we remanded this matter for a supplemental hearing before the commissioner.

On remand, the parties took the deposition of Palmetto's medical director and filed briefs addressing petitioner's PEth test. The commissioner also ordered the parties to take the deposition of the JLAP director. In February 2016, the commissioner filed his report with this court, reiterating his recommendation that petitioner should be conditionally admitted subject to his compliance with the terms and conditions of a JLAP agreement. Petitioner objected to that recommendation, and oral argument was conducted before this court pursuant to Supreme Court Rule XVII, § 9(D)(11).

This matter raises several issues for our consideration in determining whether petitioner possesses the requisite good moral character and fitness to be admitted to the bar. First, the record shows that petitioner's college and law school years were marked by his involvement in an unusually large number of criminal

offenses.[1] However, it is noteworthy that petitioner was last arrested in 2003, and he has not been involved in any criminal offense since that time. While the criminal offenses are serious, and the pattern of offenses is disturbing, given the age of the conduct and the fact that the conduct has not been repeated in the last thirteen years, we find that the criminal offenses, standing alone, are not a basis to deny admission.

The second issue we will consider is petitioner's lack of candor. The commissioner found there is no question that petitioner demonstrated a lack of candor when he applied for admission in 2003, as he did not update his application to disclose his arrest for hit and run driving or his arrest for aggravated battery. While Supreme Court Rule XVII did not then contain a provision imposing a continuing duty to keep the bar application current, nevertheless, petitioner was obligated to disclose material facts in connection with his bar admission application. Furthermore, in finding that petitioner demonstrated a lack of candor, the commissioner implicitly rejected petitioner's explanation that he contacted the Committee after the hit and run and was informed that he was not required to update his application. Notwithstanding this finding, the commissioner also found that petitioner is rehabilitated from his lack of candor, given that he truthfully completed his 2014 application and testified openly and honestly at the character and fitness hearing. We cannot say that the commissioner's credibility finding in this regard is clearly wrong. *See In re: Hinson-Lyles*, 02-2578, n.6 (La. 12/3/03), 864 So. 2d 108 ("[w]hile we afford some deference to the commissioner's recommendation, making due allowance for the commissioner's opportunity to

---

[1] These included the following: April 1997 citation for minor in possession of alcohol; September 1999 citation for transferring alcohol to a minor; February 2001 arrest for hit and run driving and reckless driving; May 2002 citation for disturbing the peace; September 2002 arrest for battery, public intoxication, and disturbing the peace; February 2003 arrest for hit and run driving; and July 2003 arrest for aggravated battery. None of these arrests resulted in a criminal conviction.

observe and evaluate the demeanor of the applicant and the witnesses, the ultimate decision regarding admission rests with this court").

Next, we turn to petitioner's alcohol issues. The record reveals that in July 2005, during petitioner's first bar admission proceeding, he was admitted to Palmetto Addiction Recovery Center for a five-day inpatient substance abuse evaluation. Following the evaluation, petitioner was diagnosed as meeting the criteria for substance abuse. JLAP and Palmetto recommended that petitioner enter into a one-year monitoring agreement with the standard conditions, but petitioner refused to execute the agreement. The bar admission proceeding then lingered without action for nine years, until it was dismissed by the court.

In 2013, in conjunction with his second application for admission, petitioner was briefly "interviewed" by a physician at Palmetto. During this "interview," petitioner reported that he only drinks alcohol once or twice a month and that he abstained completely from alcohol from February 2012 through February 2013. Because petitioner had never been subject to a JLAP agreement, this was an anecdotal report only and was not supported by objective evidence. Based on the information petitioner himself reported to Palmetto, he was diagnosed with a "distant history of alcohol abuse, in remission," and Palmetto concluded that petitioner does not need treatment and does not need JLAP monitoring. After Palmetto issued its report to this effect, it received the positive results of petitioner's PEth test, but no amended report was issued.

Notwithstanding Palmetto's report, the commissioner recommended that petitioner's admission be conditioned upon his compliance with a JLAP agreement because he has not been able to provide the court with documented rather than anecdotal evidence of his rehabilitation from alcohol abuse. Petitioner objects to this portion of the commissioner's recommendation, citing the Palmetto report.

4

We agree with the commissioner that petitioner's failure to provide this court with documented evidence of his rehabilitation from alcohol abuse is troubling, particularly given that all of his underlying conduct is alcohol-related. Petitioner has gone to significant lengths to avoid complying with a JLAP agreement when that was recommended eleven years ago in connection with his first bar admission proceeding. Furthermore, the conclusions drawn in the 2013 Palmetto report are clearly based upon information provided by petitioner himself in a brief "interview" – information which is called into serious question by the results of the blood PEth test. Therefore, we are simply not comfortable accepting Palmetto's recommendation that petitioner "does not appear to need LAP monitoring at this time." Accordingly, as a condition of petitioner's admission to the bar, we will require that he enter into a JLAP diagnostic monitoring agreement for one year.

Finally, we must address the issue of petitioner's competence to practice law. As previously stated, petitioner passed the Louisiana bar exam in July 2003.[2] He admits that he has not attended any continuing legal education courses since that time. This raises concerns over whether petitioner has kept current in the law. To address this concern, we will adopt the commissioner's recommendation that petitioner be required to attend additional continuing legal education courses. Petitioner shall also be required to attend and successfully complete the Louisiana State Bar Association's Ethics School.

In sum, after hearing oral argument, reviewing the evidence, and considering the law, we conclude petitioner is eligible to be admitted to the practice of law in Louisiana, subject to the following conditions:

> A. Petitioner shall execute a one-year diagnostic monitoring agreement with JLAP.

---

[2] Petitioner did recently re-take and pass the Multistate Professional Responsibility Examination.

B. The period of this conditional admission shall coincide with the period of petitioner's JLAP agreement. However, petitioner's conditional admission status shall not be terminated until this court so orders.

C. Petitioner shall authorize the Executive Director of JLAP to report any violations of the JLAP agreement to the Office of Disciplinary Counsel ("ODC").

D. Upon the expiration of the term of petitioner's JLAP agreement, the Executive Director of JLAP shall forward to the ODC (1) a final report of petitioner's progress and participation in JLAP, and (2) a recommendation regarding the need for petitioner's continued participation in JLAP.

E. Petitioner shall cooperate with JLAP and the ODC, and shall comply with any and all requirements imposed upon him by JLAP and the ODC.

F. In addition to his ordinary mandatory continuing legal education requirements, petitioner shall complete an additional 12.5 hours of continuing legal education for each year of his probationary period.

G. During the period of this conditional admission, petitioner shall attend and successfully complete the Louisiana State Bar Association's Ethics School program.

Within thirty days prior to the expiration of the conditional admission, the ODC shall file a report in this court in which it shall recommend to the court that the conditional admission be allowed to terminate or be extended.

Should petitioner fail to make a good faith effort to satisfy these conditions, or should he commit any misconduct during the period of probation, his conditional right to practice may be terminated or he may be subjected to other discipline pursuant to the Rules for Lawyer Disciplinary Enforcement.

**CONDITIONAL ADMISSION GRANTED.**

# SUPREME COURT OF LOUISIANA

## NO. 14-BA-1338

## IN RE: COMMITTEE ON BAR ADMISSIONS CFN-8972

*BAR ADMISSION PROCEEDING*

**WEIMER, J.**, dissenting.

Because the Louisiana Committee on Bar Admissions refrained from certifying the petitioner for admission, this legal standard applies: "the applicant must show by clear and convincing evidence that his or her character has been rehabilitated and that such conduct, inclination or instability is unlikely to recur in the future." La. S. Ct. Rule XVII, §5(F). This court has previously acknowledged that this standard is appropriate for a petitioner with a "long record of serious misconduct." **In re Committee on Bar Admissions CFN-8920**, 11-1973, p.1 (La. 7/1/14), 145 So.3d 388, 388.

Disconcertingly, the petitioner's record of misconduct–and his failure to fulfill even non-onerous requirements of his undergraduate university to discourage others from the perils of excessive alcohol consumption–is paralleled by the petitioner's approach to his application for admission to the bar. This matter has an abnormal–quite possibly an unprecedented–procedural history, including a period of some nine years during which this matter languished due to the petitioner's inaction.

The results of the petitioner's recent PEth test, described in the majority's opinion, were equivocal. The PEth test did not provide clear and convincing evidence that the petitioner no longer abuses alcohol. Much of the petitioner's record of misconduct appears attributable to his abuse of alcohol.

The complete facts and circumstances, including the presently unresolved issues relating to the PEth test, compel the conclusion that the petitioner has failed

to meet his burden of proving good character and fitness by clear and convincing evidence. Although I do not condone the petitioner's inaction with his bar application or his inaction in establishing that he no longer has an alcohol abuse problem during the many years since he was initially not certified for admission, I would deny the application while allowing for reapplication in one year. Commendable steps the petitioner has taken in his private and civic life presently suggest–but do not yet meet–the standard of clear and convincing evidence. In my view, the one-year period would afford a final opportunity for the petitioner to dispel lingering doubt regarding his efforts to overcome alcohol abuse, which has proven so problematic for himself and others he has encountered.

**SUPREME COURT OF LOUISIANA**

**No. 2014-BA-1338**

**IN RE: COMMITTEE ON BAR ADMISSIONS CFN-8972**

**BAR ADMISSION PROCEEDING**

**Hughes, J., dissents.**

I dissent in part for the reasons assigned by Crichton, J.

SUPREME COURT OF LOUISIANA

No. 2014-BA-1338

IN RE: COMMITTEE ON BAR ADMISSIONS CFN-8972

BAR ADMISSION PROCEEDING

**CRICHTON, J., dissents in part.**

I respectfully dissent in part from the majority opinion. I specifically disagree with the portion of the opinion imposing JLAP monitoring. Under the particular circumstances of this case, I would find that a JLAP monitoring agreement is not warranted here. First, there is no medical testimony or documentary evidence in this case that indicates a JLAP monitoring contract is warranted. Rather, the uncontested medical testimony and evidence indicates that the petitioner is not currently abusing alcohol, has not been diagnosed with alcohol dependence, and does not currently need any treatment for alcohol or other substance abuse or dependence. Second, this petitioner's alcohol abuse is now in the distant past—over a decade old. Consequently, in my view, there is no basis in the record to treat this petitioner as if he were alcohol dependent or actively abusing alcohol by requiring a JLAP monitoring agreement.

In all other respects, I join the majority opinion.